UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

ALVIN E. BROZEK,

                Plaintiff,

   vs.

OMONIYI AKINTOLA, RICHARD
GALLOWAY, and ELIAS RODRIGUEZ,

                Defendants.

NO. CV-09-0602-JLQ

**MEMORANDUM OPINION and
ORDER RE: DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

   BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 20), Memorandum in Support (ECF 20-1) and supporting declarations and exhibits.  Pursuant to Local Rule 230, the Motion was submitted without oral argument.  Plaintiff Alvin E. Brozek ("Brozek") has failed to respond to the Motion.

**I. Introduction - Factual Backgroun**d

     On September 1, 2006, Plaintiff, Alvin Brozek ("Brozek") was involved in a fight and assault in the administrative segregation yard at Mule Creek State Prison. Corrections officers, including Defendant Sergeant Rodriguez ("Rodriguez") responded to the altercation based on an officer's personal alarm being activated.  Rodriguez observed Brozek and another inmate, Garcia, attacking a third-inmate, Iverson. (ECF No. 20-7).  Rodriguez gave verbal warnings to the inmates to stop fighting and get down on the ground. (ECF No. 20-2).  Another responding officer attempted the use of pepper spray to disburse the fight.  *Id.*  Other officers gave verbal orders to stop fighting and

fired their 40 millimeter multi-launchers. *Id.* Rodriguez also had a 40 mm multi-launcher, with 40 mm exact impact rounds. An impact round is a lightweight projectile consisting of a plastic body and a foam nose. (ECF No. 20-7). It is commonly used for suppressing riots, fights, and escape attempts where non-lethal force is desired to gain compliance. *Id.* The optimal range is 10 to 75 feet. *Id.*

Rodriguez gave verbal orders for the inmates to stop fighting and get down on the ground. (ECF No. 20-7). The inmates did not obey the orders and Rodriguez observed Brozek continue to punch and kick Iverson who had fallen to the ground. *Id.* Rodriguez yelled once more for Brozek to get down, and when he did not, Rodriguez fired the multi-launcher which struck Brozek in the face. Rodriguez avers that it was not his intention to hit Brozek in the face. *Id.* In training, officers are taught that the target zone is from the waist down, excluding the groin area. (ECF No. 20-7, ¶ 3). Rodriguez claims he aimed at Brozek's waist, but that Brozek made a rapid movement in his effort to continue to attack Iverson. Rodriguez describes it as follows: "In his attempt to strike Iverson, who was on the ground, the standing Brozek bent over at the waist, placing his head approximately where his waist had been immediately before. As he did so, the exact impact round connected with Brozek's left facial area." (ECF No. 20-7, ¶ 6). Brozek was struck in the face by one of the projectiles launched from the 40 mm multi-launcher that was fired by Rodriguez.

Brozek claims that shooting him in the face constituted excessive force, or in the words of the Complaint, was "not the right amount of force" (ECF No. 1, p. 5). Brozek contends that after his injury he did not receive proper medical attention, that his treatment was delayed, and he did not receive proper pain medication. (ECF No. 1). Brozek contends that these actions by Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights.

////

//////

ORDER - 2

**II. Procedural History**

Plaintiff's Complaint (ECF No. 1) named over twenty individuals as defendants. In fulfilling its screening obligations pursuant to 28 U.S.C. § 1915A(a), this court dismissed the claims against all but five defendants--Rodriguez, Hawkins, Akintola, Galloway, and Smith. (See ECF No. 9). Subsequently, Plaintiff stipulated to the dismissal of his claims against Defendants Smith and Hawkins. (See ECF No. 17 and 18). The remaining three Defendants, Rodriguez, Akintola, and Galloway (herein "Defendants") filed a Motion for Summary Judgment on August 24, 2010. Plaintiff has failed to file a response to the Motion.

**III. <u>Rand</u> Notice**

The United States Court of Appeals for the Ninth Circuit, sitting en banc in <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998), reaffirmed its requirement that pro se prisoner litigants receive notice of the requirements of the summary judgment rule, the obligations imposed in responding to summary judgment, and the effect of failing to successfully oppose summary judgment--that the case will be over and there will be no trial.

In its Order directing service of the plausible claims against Rodriguez, Hawkins, Akintola, Galloway, and Smith this court advised Plaintiff of the import of dispositive motions. (ECF No. 11). Paragraph 7 of the court's Order begins "**NOTICE - WARNING**" and informs Plaintiff in plain ordinary language that: "The Court must grant a summary judgment motion filed under Federal Rule of Civil Procedure 56 when there is no genuine issue of material fact and the moving party is entitled to judgment as matter of law. This means the Court will find in favor of the moving party if there is no real dispute about any fact that affects the result of the case and if the moving party is entitled to judgment as a matter of law. This will end the case." (ECF No. 11 p. 3-4). Plaintiff was further advised that if he failed to respond, Defendants' evidence may be taken as true and "final judgment may be entered without a full trial." (ECF No. 11 p. 5). Plaintiff was also directed to Fed.R.Civ.P. 56 and Local Rule 260. The court also

directed that the Clerk's Office provide Plaintiff a copy of the Local Rules.

The <u>Rand</u> court held that the required notice may be given by the moving party.  In moving for summary judgment, the Defendants herein reminded Plaintiff that if the Motion was granted, it will end the case. (ECF No. 20).  Defendants' Motion also informed Plaintiff of what is required to respond to a motion for summary judgment, and again referenced Fed.R.Civ.P. 56 and Local Rule 260. (ECF No. 20).

The court's notice (ECF No. 11) and the notice provided in Defendants' Motion (ECF No. 20) meet the fair notice requirements of <u>Rand</u>.

**IV. Discussion**

**A. Defendants' Motion is Unopposed**

Local Rules 230 and 260 govern the procedure and substance of responses to summary judgment motions.  Local Rule 230(l) provides that motions in prisoner actions shall be submitted without oral argument unless otherwise ordered.  Further, "opposition, if any, to the granting of the motion shall be served and filed by the responding party not more than twenty-one (21) days after the date of service of the motion." LR 230(l).  Defendants' Motion was filed on August 24, 2010, and Plaintiff's time for responding has long since expired.  "Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions." LR 230(l).

Even when a party fails to respond to a motion for summary judgment, the Ninth Circuit has held that it is improper to grant the motion based merely on the failure to respond or violation of local rule. *Ahanchian v. Xenon Pictures, Inc.*, __F.3d__, 2010 WL 4323429 *4 (9th Cir. November 3, 2010) ("Ninth Circuit precedent bars district courts from granting summary judgment simply because a party fails to file an opposition or violates a local rule.").  Rather, the court must view the motion to determine if it is properly supported under Fed.R.Civ.P. 56 and analyze whether the factual record entitles the movant to summary judgment or whether a disputed material fact is present.

**B.  Eight Amendment Claims against Akintola and Galloway**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  As the denial of medical care could, in the most egregious instances, "actually produce physical torture or a lingering death," the Supreme Court has found the Eighth Amendment's prohibition on cruel and unusual punishment applicable to prisoner claims concerning medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits "deliberate indifference to serious medical needs." *Id.* at 104.  But, "this conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  Claims of negligence against a physician do not state a valid claim under the Eighth Amendment: "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.   Questions involving the exercise of medical judgment will typically be insufficient to state a claim. *Id.* at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.") see also *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("At most [Plaintiff] has raised a difference of medical opinion regarding his treatment.  A difference of opinion does not amount to a deliberate indifference to [Plaintiff's] serious medical needs.").

**1.  Brozek's Medical Treatment**

Brozek was injured in the Administrative Segregation yard on September 1, 2006, when he was shot in the face with the 40 millimeter multi-launcher which shoots a projectile with a plastic body and foam nose.  Brozek was medically evaluated by a medical technical assistant on the yard before being sent to the prison's triage and treatment area. (ECF No. 20-2).  There was significant swelling and bruising and a minimal laceration below Brozek's eye. *Id.*  Brozek was referred to Sutter Amador Hospital. *Id.*  There he was diagnosed with a fracture of the orbital bone and a possible retinal detachment. *Id.*  Brozek was prescribed Vicodin for the pain.  Four days after the injury, Brozek underwent opthalmological surgery at University of California at Davis

on September 5, 2006, to repair the detached retina.

Over the next several weeks, Brozek continued to receive pain medication including Vicodin, Naprosyn, and Tylenol and had additional consultations with prison doctors and outside physicians. Eventually, on February 2, 2007, specialists at UC-Davis determined that due to Brozek's previous retinal surgery, reconstructive surgery of the left orbital socket was not recommended because it could lead to vision loss. (ECF No. 20-2).

## 2. Dr. Galloway

Dr. Galloway first personally saw Brozek approximately one week after his September 1, 2006 injury. Dr. Galloway became familiar with Brozek's medical history concerning his facial injury from an examination of his medical chart. (ECF No. 20-3). He continued Brozek on pain medication, and examined him on September 8, 2006, with a plan to follow-up with an opthalmologist and otolaryngologist in the coming weeks. He examined Brozek again on September 11, 2006, and September 22, 2006. (ECF No. 20-3). At that point, Brozek reported he had seen an opthalmologist, but had been told he would not see the otolaryngologist until his retinal issues resolved. Dr. Galloway contacted UC-Davis to verify whether Brozek needed to wait to see an otolaryngologist and an appointment was scheduled for Brozek to see the otolaryngologist the following week. Dr. Galloway then saw Brozek for three additional follow-up exams between September 29, 2006 and October 10, 2006.

## 3. Physician Assistant Akintola

Akintola's first interaction with Brozek concerning his facial injury was approximately eight weeks post-injury on October 24, 2006. (ECF No. 20-5).[1] By this time, Brozek had already had the retinal surgery, had consulted with Dr. Galloway numerous times, and had seen outside specialists. At the October 24, 2006, examination,

---

[1]Defendant Omoniyi Akintola's name is spelled various ways throughout the record. The court adopts the spelling, taken from his declaration, and refers to him as Akintola herein.

Akintola found Brozek to be in "no apparent distress." (ECF No. 20-5). Brozek was at that time taking Tylenol for pain. Akintola saw Brozek for follow up appointments in November and December 2006, and prescribed Naprosyn for any pain Brozek was still experiencing, even though Brozek was in no apparent distress.

Akintola saw Brozek again on January 9, 2007, and at this time he complained of pain and headaches in his left temple. As it was four months post-injury Akintola was skeptical of this claim and indicated in his notes that Brozek may be "drug seeking," but nonetheless prescribed Tylenol and Naprosyn. (ECF No. 20-5).

**4. Conclusion**

Brozek received extensive medical treatment over several months for the injury to the left side of his face and eye. He was prescribed Tylenol, Naprosyn, and Vicodin for the pain, and those prescriptions were extended over several months. He was referred to outside specialists and had eye surgery to repair the retinal detachment just four days after the injury. Brozek has produced no evidence that Dr. Galloway or physician assistant Akintola were deliberately indifferent to his serious medical need. Defendants Galloway and Akintola are entitled to summary judgment on all claims against them.

**C. Eighth Amendment Claim Against Rodriguez**

The only remaining claims are those against Sergeant Elias Rodriguez who shot Brozek with the multi-launcher. As stated, *supra,* on September 1, 2006, Rodriguez responded to the Administrative Segregation yard based on an alarm activated by another prison guard. When he arrived at the yard he observed Brozek and another inmate attacking a third inmate. (ECF No. 20-7). Rodriguez gave verbal orders for the inmates to stop fighting and get down on the ground. *Id.* The inmates did not obey the orders, and Rodriguez observed Brozek continue to punch and kick a third inmate who had fallen to the ground. *Id.* Another responding officer attempted the use of pepper spray to disburse the fight. (ECF No. 20-2). Other officers gave verbal orders for the inmates to stop fighting and fired their 40 mm multi-launchers. *Id.* Rodriguez yelled once more for Brozek to get down, and when he did not, Rodriguez fired the multi-launcher, which

struck Brozek in the face. This caused Brozek to stop his attack on the fallen inmate. Rodriguez avers that it was not his intention to hit Brozek in the face. *Id.*

Plaintiff has not filed any affidavits or other supporting documents in opposition to Defendant's Motion to controvert these facts. "An opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavit or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Although he has filed no opposition, Plaintiff's Complaint does confirm that he was involved in an altercation in the prison yard to which Rodriguez responded. (ECF No. 1 p. 4).

In *Whitley v. Albers*, 475 U.S. 312 (1986), the Supreme Court addressed an inmate's Eighth Amendment claim where he was shot in the leg with a shotgun as officers responded to a riot situation. The Court stated: "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 319. In applying the *Whitley* approach, the Court stated that it may be appropriate to consider the following factors: 1) the need for application of force; 2) the relationships between that need and the amount of force used; 3) the threat reasonably perceived by the responding officials; and 4) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

In this case, there was a need for force to stop the assault and prevent injury to the third inmate, who had fallen to the ground, and whom Rodriguez observed was being punched and kicked by Brozek. Rodriguez and the responding officers used non-lethal force. Rodriguez and the other officers first attempted to stop the assault by using pepper spray and when that did not stop Brozek's assault, used the 40 mm multi-launcher which fires plastic/foam bullets. Rodriguez and the officers made reasonable efforts to temper the severity of their response by first giving verbal warnings and then used pepper spray. Although the injury to Brozek was more severe because he was struck in

ORDER - 8

the head, rather than in the lower body, such fact taken alone is not evidence that Rodriguez' actions were malicious or sadistic and does not demonstrate an excessive use of force.  As observed by the Supreme Court, courts should exercise an "appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320.

Other courts have also held that the use of the multi-launcher, with its foam and plastic projectile, to break up prison fights or as a security measure to quell disruptive inmates does not violate the Eighth Amendment.  See *Carmona v. McGrath,* 2006 WL 2168692 (N.D. Cal. 2006) and *Raspberry v. Trevino*, 2009 WL 3461918 (E. D. Cal. 2009).

Defendant Rodriguez is entitled to summary judgment, on this record, on Plaintiff's claim of excessive force in violation of the Eighth Amendment.

### D.  Plaintiff Does Not Have a Fourteenth Amendment Claim

This court previously stated in its screening order that: "Since Plaintiff's interests in personal security and medical care in this case finds an explicit textual source of constitutional protection in the Eighth Amendment, Plaintiff's claims should go forward as Eighth Amendment claims, not Fourteenth Amendment claims." (ECF No. 9 p. 7).  As Plaintiff did not respond to the Motion for Summary Judgment, it is unknown whether he would continue to press his claims as substantive due process claims.  Any such argument would be to no avail.  See *Estelle v. Gamble*, 429 U.S. 97 (1976) (claims of deliberate indifference to medical needs analyzed under the Eighth Amendment); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified.").  Accordingly,

**IT IS HEREBY ORDERED**:

1. The Motion for Summary Judgment (ECF No. 20) filed by the remaining three

Defendants Akintola, Galloway, and Rodriguez is hereby **GRANTED**.

2. The Clerk is **directed to enter Judgment** dismissing the Complaint (ECF No. 1) and the claims therein with prejudice and **close this file**.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and Judgment, furnish copies to counsel and Plaintiff, and close this file.

**DATED** this 24th day of November, 2010.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 10